ALASKA PACKERS' ASS'N v. LETSON et al.

(Circuit Court, D. Washington, N. D.  December 16, 1902.)

No. 911.

1. PATENTS—INFRINGEMENT—EQUIVALENTS.
   A mechanical equivalent must be adaptable to use as a substitute for something else, and competent to perform the functions of a particular device for which it may be substituted.

2. SAME—CAN-HEADING MACHINES.
   The Jensen patent, No. 376,804, for a can crimping and capping machine, covers an invention of such merit and utility as to entitle its claims to a liberal construction. As so construed, claims 5, 9, and 10 are infringed by the machine of the Letson & Burpee patent, No. 629,574; claims 1, 3, and 11 *held* not infringed.

## In Equity.

This is a suit in equity, commenced and prosecuted by the Alaska Packers' Association, a corporation, of the state of California, against J. M. K. Letson and F. W. Burpee, a firm engaged in the manufacture of machinery at Fairhaven, in the state of Washington. The complainant sues as the assignee and owner of United States letters patent No. 376,804, issued January 24, 1888, to Mathias Jensen, of Astoria, Or., for a can crimper and capper, a machine which has been extensively used in the business of canning salmon on the Pacific coast since the date of the patent. The bill of complaint charges infringement of said letters patent on the part of the defendants by making and selling without license other machines embodying the invention protected by said patent, and the prayer of the bill is for an injunction to restrain the continuance of such infringement, and for an accounting. This can crimping and capping machine and other inventions of Mathias Jensen have figured extensively during the past 10 years in litigation under the patent laws in the courts of the Ninth circuit, in which Jensen or his assignees were required to defend against similar charges of infringement. At first it was decided that his can crimping and capping machine was an infringement of older patents. See Norton v. Jensen, 1 C. C. A. 452, 49 Fed. 859, in which case the circuit court of appeals affirmed the decision of the United States circuit court for the district of Oregon, by Judge Sawyer. The circuit court of appeals, in the case referred to, commended the Jensen machine as being a valuable improvement, and successful in operation; but, giving a broad and liberal construction to one of the patents sued on in that case, which, from the evidence submitted, appeared to be a patent covering an invention of an original or pioneer character for automatically and rapidly placing the caps or end pieces upon can bodies, the court decided the Jensen machine to be an infringer. In cases which were subsequently considered, however, upon additional evidence, the court took a different view of the merits of the Norton inventions, and denied that they were infringed by an improved Jensen machine, built according to the specifications and drawings of United States letters patent No. 443,445. See Wheaton v. Norton, 17 C. C. A. 447, 70 Fed. 833; Norton v. Jensen, 33 C. C. A. 141, 90 Fed. 415.

Mr. L. W. Seely, one of the witnesses for complainant, gives a perspicuous general description of the Jensen crimping and capping machine, as follows: "The machine shown in the Jensen patent is one for placing heads upon cans, and is intended more particularly for heading cans which have already been filled. Consequently, one of its chief characteristics is that the can enters the machine in a vertical position, and remains in that position while being headed,—this in order to prevent the contents of the can from being spilled. The machine comprises, in the first place, a table, which supports the can-heading mechanism, which I will refer to hereafter. An automatic feeding device is provided, comprising a belt, lettered A in the drawing, which belt has automatically operated spacing mechanism to insure the feeding of only one can at a time. The cans entering the machine upon this belt in a perpendicular position are received by a feeding or transferring device which changes the direction of their motion, and transfers them to the header. When so transferred, each can rests upon a can support or plunger, which is situated in a vertical line with an upper plunger. Between the two plungers is a conical guide or opening, in which the heading takes place. The heads or caps are also automatically fed into the machine, and, when they reach their final destination, are in line with the can, and rest upon movable slides provided with countersinks or ledges which hold them in position. When the parts are in the position I have just stated, the lower can support or plunger is raised, lifting the can, and forcing it through the conical guide, and into the cap as it rests in the countersink. The upper plunger forms a backing or abutment for the cap during the heading operation. As soon as the can is introduced into its head, the slides are withdrawn, and the lower plunger descends, being followed down by the upper plunger, until the can reaches the level at which it entered the header, after which, in its headed form, it is delivered. In the passage of the can to the header it operates a

mechanism which controls the delivery of heads from their feeding device, the can striking a lever, which, through a connected mechanism, withdraws a stop from the can-head feed, and permits one head to be delivered. After the heading of the can in the Jensen machine, it is transferred from there to a crimping device, where the head is secured in place, and is then discharged from the machine."

The answer makes an issue as to the validity of the patent sued upon, but Mr. Wheaton, solicitor for the defendants, in his oral argument upon the hearing of the case fairly admitted the validity of the patent, and its merit as a useful improvement in machinery for automatically putting the head pieces or caps on filled cans, and conceded the invention to be of such degree of merit that the courts would apply a liberal rule in construing the patent to cover the actual combinations specified and claimed and all combinations of equivalent elements. It is also an undisputed fact in the case that the defendants are engaged in manufacturing and furnishing for fish canneries machines for automatically putting the head pieces or caps on cans already filled with fish, doing exactly the same kind of work as the Jensen crimping and capping machine, except crimping the flanges of the can heads, which is a part of the can-heading operation not performed by the alleged infringing machine.

The defendants are the inventors of a can-capping machine described in specifications and drawings in a patent therefor issued to them July 25, 1899, being United States letters patent No. 629,574, and the machines which they are manufacturing and offering for sale are built according to said specifications and drawings with certain modifications and improvements found to be useful since the date of their patent. As I have stated, the defendants' machine is designed to automatically place the caps on filled cans, and does that part of the work in a manner similar to the operation of the Jensen machine. Both machines comprise combinations of similar devices having the same functions, and the principal elements common to both, admitted by the testimony of the defendant Burpee upon his cross-examination, are as follows: There is in both machines a conical guide; that is, a beveled or funnel-shaped hole, which acts to round up and size and guide centrally the can into the can head or cap, which is held in place above the can by a ledge or countersunk space above the conical guide. In both machines there is an endless traveling belt, which carries the cans to a second feeding mechanism, which receives them one by one. In both machines similar means are provided for checking the cans in their passage upon the traveling belt, and spacing them so that each can must, with precision, come in contact with the second feeder, designed to move it to the proper position for capping. In both machines the cans are swept off the carrier belt by the second feeder. In both machines the transferring feeders are geared to move continuously when the machine is in operation. In both machines each can in its forward movement, by contact with a device in the nature of a trigger, withdraws temporarily a stop in the path of the can heads so as to admit of but one head at a time being conveyed to the machine. In both machines the can heads are carried automatically in a continuous line until brought in contact with mechanism for placing them one at a time in a position above and in line with the conical guide. In both machines the feeder places the cans one at a time on a rising and falling plunger or can support which moves each can upward into the conical guide. Both machines have, in connection with the conical guide, sliding plates having their inner edges shaped as arcs of a circle, and operate to close up, so as to form a complete circle, and to recede, so as to expand after each can has received its cap, and to admit of the can with the cap upon it being depressed downward and discharged from the conical guide. Both machines have an upper plunger above the cap when in position to receive the can, which rests upon the cap to resist the upward movement of the can, and follows the can downward after it has received its cap; and in both machines each can is automatically carried away from the plunger or can support after being capped.

If the Jensen machine, in its entirety, might be considered as the patented invention, and if another machine doing its work automatically by the opera-

tion of combinations of similar devices amounted to an unlawful infringement entitling the owner of the patent to redress at the hands of the court, the decision of this case would certainly have to be adverse to the defendants. But there is no patent covering the Jensen can crimping and capping machine as an entirety. The patent protects only the particular combinations referred to in each of its several claims, and to convict the defendants of infringement it is necessary for the court to find in the defendants' machine the same combination of devices and elements comprised in one or more of said claims, or equivalents for each element of a combination claimed. In this case it is not asserted that all of the 16 claims of the patent sued on have been infringed by the defendants. According to the evidence and arguments, the controversy relates only to claims numbered 1, 3, 5, 9, 10, and 11, which read as follows:

"(1) An endless traveling carrying belt, a stop, E, extending across it to change the direction of the cans, and arms swinging over the belt, whereby the delivery of the cans from the belt to the feeder is rendered exact, substantially as herein described."

"(3) In combination with a transverse belt, the feeder having the projecting arms between which the cans are received from the belt and the actuating devices by which the motions of the feeder are produced, substantially as herein described."

"(5) The inclined chute into which the caps are placed, and a stop extending across said chute, so as to prevent the caps from moving downward, in combination with a trigger extending across the path of the cans as they are moved toward the capping table, said trigger being connected with the stop, so that as it is moved backward by the passage of the can it withdraws the stop to allow a cap to move down the chute, substantially as herein described."

"(9) The vertically moving plunger upon which the cans are delivered by the feeder, in combination with the conical guide situated above the cans, and the transversely moving slides upon which the caps are received and held, with a mechanism by which the slides are withdrawn as the can enters the cap, substantially as herein described.

"(10) The vertically moving plunger by which the can is raised to receive the cap, and the guide into which the upper end of the can enters the transversely moving cap-holding slides, in combination with the second plunger moving vertically above the cap and following it down by gravitation or otherwise, so as to steady the can in its descent after the cap has been applied, substantially as herein described.

"(11) The vertically moving plunger upon which the can is received, a carrier for placing the can upon the plunger, and a mechanism by which this plunger is reciprocated vertically in combination with a second plunger, which rests upon the top of the cap and steadies it while descending, and a mechanism for raising the second plunger before the arrival of the next cap, substantially as herein described."

Neither of the claims comprise the particular mechanism of the Jensen machine, by which the can heads are transferred from the delivery chute and introduced with rapidity and precision into the countersunk ledge above the conical guide and under the upper plunger.

The subjoined drawings fairly represent the important parts of the two machines. The first sheet is a sectional view taken from a Jensen machine, which was exhibited in operation upon the trial. It is intended especially to show the form, location, and use of the stop-bar, E. The machine from which the drawing was made differs from the specifications in the Jensen patent in this particular: that sprockets and a chain are used to move the cans upon a track in the operation of feeding the cans to the machine in place of the traveling belt described in the specifications. Cuts II, III, and IV are taken from drawings of parts of the Jensen machine by Mr. Monteverde, a witness for the complainant. Cuts V and VII are from drawings of the Letson and Burpee machine, by the same expert witness.

## CUT I.

### Jensen Machine—Sectional View.

## CUT II.

### Jensen's Feeder.

## CUT III.

### Jensen's Cap-Feeding Mechanism.

## CUT IV.

### Jensen's Capping Mechanism.

## CUT V.

### Letson & Burpee's Can-Feeding Mechanism.

## CUT VII.

### Letson & Burpee's Can-Capping Mechanism.

John H. Miller and Dorr & Hadley, for complainant.
Wheaton & Kalloch and Kerr & McCord, for defendants.

HANFORD, District Judge (after stating the facts). I will proceed now to a consideration of the claims in their order, and the question whether either of them has been infringed by the defendants' machine. There are three elements in the first claim, viz., an endless traveling belt, a rigidly fixed stop-bar, and flexible spacing bars swinging over the belt. By this combination of devices the cans are introduced one by one into the heading machine. There is no originality in the devices nor in the combination. The sole merit of the claim consists in the adaptation of the combination to the work of bringing the cans in a vertical position, with the required rapidity and precision, within the influence of the other mechanism which places the caps upon them. In the defendants' machine we find the identical device of a carrying belt performing exactly the same work as the carrying belt in the Jensen machine, and operating in the same way, and flexible spacing bars, which, if not identical in form and mode of operation, certainly have the same office as similar devices in the Jensen machine, and they are so nearly alike in their construction and mode of operation as to be equivalents. Thus we find in the defendants' machine two of the three elements of this combination, but that is all. That the defendants' machine does not contain the stop-bar, E, of the Jensen machine, is admitted; but it is contended that in the operation of the defendants' machine the cans are stopped in their forward movement upon the traveling belt by a device which is equivalent to the bar, E. This contention is stoutly denied by the defendants, and the scientific experts who have testified in behalf of the complainant are, with respect to this point, flatly contradicted by the evidence for the defendants. It will be convenient now to refer to the accompanying drawings illustrating the different parts of the two machines in which the elements of the first claim are designated as follows: A traveling belt, A, the spacing bars by the letters j, j, and the stop-bar by the letter E. In the defendants' machine the traveling belt is numbered 59, the swinging spacing bars 79, and the secondary feeder, which removes the cans from the carrying belt and places them upon the plunger, is numbered 36. This feeder is a wheel, fixed upon a central axis, which rotates in a true circle above the carrying belt, the periphery of which, instead of being circular, is cut away so as to form four concave spaces or pockets, which, as the wheel rotates, partly encircle the cans, sweeping them off the belt upon a curved track slightly inclined, so as to carry them over the belt to the plungers, the cans being kept upon the curved track by a guard, designated 63. The periphery of the wheel, 36, between the four concavities is convex, and the mechanism is so adjusted that each can as it moves upon the belt comes first in contact with the convex portion of the wheel, and according to the testimony in behalf of the complainant the can is stopped in its forward movement when it first strikes the wheel before the concavity operates to change the direction of the can from the direct line of the traveling belt towards the curved track, so that the convex

119 F.—39

part of the wheel operates as a stop-bar, performing the same function as the bar, E, in the Jensen machine. This would be true if the periphery, instead of being convex, was cut away to form a straight edge, with an angular shoulder between the point where the can first comes in contact with it and the concavity, or if the speed of the belt in operation was faster than the speed of the wheel, so that the distance which the belt moves before the can commences to move laterally were perceptibly greater than the vacuity between the round can and the swiftly moving convex part of the wheel; but it is my opinion that the evidence, including the exhibit of the defendants' machine in operation upon the hearing, demonstrates that in active operation the can does not make any perceptible stop, but moves continuously, just as a railway train continues onward when its course is changed from a tangent to a curve. The speed of the can is undoubtedly checked, but the rapidly revolving wheel with its curved periphery admits of a continuous onward movement of the round can without halting for any fraction of time whatever. It does not help the case for the complainant to say that the cans are arrested in their forward movement by coming in contact with 36, and kept in position to be caught by its concave pockets, because that effect is not produced by any distinct operation of 36. That member of the organization in the defendants' machine seizes the cans while moving upon the belt, and by one continuous circular movement deflects them from the tangent upon which the belt travels to the curve described by the track and the guard, 63, and places them upon the plungers, and it does not at any time act as a stop. My conclusion is that the stop-bar, E, is an element of claim 1 which is entirely dispensed with in the organization of the defendants' machine, and, being entirely eliminated, infringement of this claim has been avoided.

One element of the combination comprised in claim 3 is the secondary feeder, F, which removes the cans from the carrying belt, and places them upon, and leaves them upon, the plunger, S, which is rigidly fixed in the central part of the machine, but moves vertically with regularity in time to push the cans upward into their caps, and descend after the caps are placed. By reason of its rigid location, S cannot actively assist in removing the cans from the grasp of the feeder, F, which, by its own movements, delivers the cans one at a time upon S, and removes them from it after they are capped. It is my opinion that infringement of this claim has been avoided by not reproducing in defendants' machine this feeder F, or substituting any equivalent for it. Therefore it is unnecessary to comment upon the other elements of claim 3. F is a straight-back with four arms or prongs, designated in the drawings by the letter H, projecting at right angles, so as to form three stalls or pockets. It is attached to three cranks which rotate, giving it an eccentric sweeping movement, which in operation pushes the cans laterally off the belt and longitudinally a step at a time. Each can, when in contact with E, is held stationary with the belt slipping under it, and in that position it first comes in contact with F between the first and second arms, H; that is to say, F, by its sweeping movement, comes against the can, and receives it into the first of the three stalls, and pushes it at right angles to the line

which the belt travels off the belt, and then moves it a short distance further into the machine towards S, and then recedes, leaving the can stationary upon the table until the next sweep, when it is received into the second stall,—that is, between the second and third arms,—and by that movement delivered upon the top of S, and F again recedes, leaving the can to be operated upon by S, in combination with other devices which put the cap upon it. Then by the next sweep F again receives the can after being capped in the third stall,—that is, between the third and fourth arms,—and moves it off the plunger, and again leaves it stationary upon the table, until by the next sweep the fourth arm, H, moves it a step further to a position within the influence of other devices which automatically deliver it to that part of the machine which crimps the flange of the cap tightly upon the can body. The feeder 36 in the defendants' machine necessarily acts in combination with the plungers, of which there are four in that organization, each of which is seated upon a projecting bracket or radial arm attached to a central revolving shaft, which causes the four brackets or radial arms to move continuously in a circle reverse to the continuous circular movement of 36. When a can, impelled by 36, and guided by the curved track and guard, 63, is brought into position upon the plunger seated upon the projecting extremity of one of the constantly turning radial arms, it is by that reverse circular movement released from the concavity, and it does not afterwards come in contact with any part of 36. The differences between F and 36 are radical, and not mere differences of shape and motion. I am not satisfied in my own mind that a true circular continuous movement of any device necessarily produces a fundamental difference from that produced by an eccentric and intermittent movement, but in this case the result produced by the differences in the movement of 36 from the movements of F is radical. A mechanical equivalent must be adaptable to use as a substitute for something else, and competent to perform the functions of a particular device for which it may be substituted. The word "equivalent" means equal in force and effect. 11 Am. & Eng. Enc. Law (2d Ed.) 252. Now, the feeder F, by its own movement, completes the delivery of the cans one at a time upon the plunger, S, and, after they are capped, removes them from it. The feeder 36 only places the cans upon the plungers. It cannot complete the delivery, because it cannot release them by its own movements; and it does not perform any part of the important function of removing the cans from the plungers, nor can it be adapted to perform both of these functions and work in combination with a rigidly located vertical moving plunger. Therefore I hold that 36 is not an equivalent for F. Nor can any combination of the devices in the defendants' machine which do perform all the functions of F be adapted to do the same work as F without entirely reorganizing the different combinations so as to make a different machine.

Claim 5 covers an important part of Jensen's invention, but the question whether this claim is or is not infringed is not important in this particular lawsuit, and for the sake of brevity I will not undertake to make a detailed comparison of this part of the machine with any of the mechanism of the defendants' machine. I say that the question

as to infringement of this claim is not important, because it has been proved by uncontradicted evidence that the defendants' machine can be operated successfully, rapidly, and economically without the set of linked fingers which act as stops upon the can heads while being conducted to the machine upon the traveling belt. Therefore an injunction to prohibit the manufacture and sale of machines having these spacing fingers to act upon the can heads will not hurt the defendants, and, if they dispense with the spacing fingers, infringement of this claim will be avoided, because there will then be no element in their machine to perform the functions of the stop designated by the letter P, which is operated to permit the caps to pass into the machine one at a time by contact of the cans with a trigger designated by the letters N and O. These members of the combination in claim 5, N, O, and P, perform an important function in the Jensen machine, so that the combination will be broken and infringement avoided by making a machine in which that function is not necessary.

The fundamental principle of Jensen's invention is the application of power to automatically receive sheet-metal filled cans in an upright position, and swiftly, accurately, and economically apply tight-fitting flanged covers over the top or open ends. The combination of devices which perform the important part of this operation are comprised in claims 9, 10, and 11 of the patent. These I consider to be the vital parts of the machine. The elements of claim 9 are a vertically moving plunger, designated by the letter S in the drawings; the conical or beveled hole situated above and in line with it; and two segments of a circle with mechanism to cause the two parts to join each other so as to form a complete circular opening smaller than the top of the beveled hole, and situated immediately above it, and to recede so as to enlarge the circular opening. The function of S is to receive the can and push it vertically into the conical guide until the top of the can receives the flanged cover, and then, acting in combination with the mechanism for actuating the movable segments which have supported the cover above the beveled hole, descends the moment the segments recede from each other, so as to release the headed can from the contracted circle. According to the undisputed evidence, this machine is the first one ever designed which in use has proved to be successful in applying tight-fitting covers upon filled cans, and its merits are such as to require liberality in construing these claims, so as to protect the owner of the patent from infringement by mere changes which any skilled mechanic might easily make in the devices which actuate the movable segments of the cap holder. The claim does not specifically mention any particular device for actuating the slides, although the specifications and drawings show the means which the inventor applied; but, giving a liberal construction to the claim, I do not consider that it should be restricted to the use of those particular devices. When this invention was perfected, there were numberless devices of arms, elbows, rings, wheels, levers, wedges, screws, springs, weights, cogs, and cams known to machinists which are adaptable to apply the force required to perform the function of contracting and expanding an open circle formed by movable segments. In the defendants' machine there are beveled holes above and in line with vertical moving plung-

ers through which the open top ends of the cans are pushed into the tight-fitting flanged covers supported above the hole by segmental plates which are movable, and when actuated the parts join each other so as to form a central circular opening through which the top end of the can passes into the cover, and there are actuating devices which cause these plates to form a resting place for the covers, and to recede at the right moment, so as to expand the circular opening and release the cans after the heads have been applied. The function of these segmental movable plates is exactly the same as in the Jensen machine, and the same result is accomplished by exactly the same means. There is this difference: that in the defendants' machine the cap holders are divided into three segments instead of two, and there is some difference in the devices for actuating them, to which further reference is unnecessary. The conical guides or beveled holes in the defendants' machine are similar to the same devices in the Jensen machine, the only difference being that in the defendants' machine as organized there are four conical guides to work in combination with four plungers, instead of the one guide in the Jensen machine. The defendants and their solicitors have labored strenuously to show by evidence and argument a substantial difference between the plungers in the defendants' machine and the Jensen plunger, but it is my opinion that they are alike in form and mode of operation, and perform the same functions in both machines by the same means. It is said that the Letson and Burpee plungers have two motions,—vertical and horizontal; that is, a circular motion on a horizontal plane,—and that the Jensen plunger has no other movement than the vertical. But I find that in the operation of the defendants' machine the plungers do not move at all, except as they are pushed upward by contact of the lower end of the piston, designated by the number 18, with the inclined surface of the cam, 46, as the radial arms which support the plungers revolve upon their central axis. The plungers are always in line with the conical guide into which they push the cans by the only movement which the plunger is capable of making. The lower end of 18 reaches the highest elevation of the inclined plane when the can has entered the can head, and then, as the radial arms continue to revolve, the headed can descends vertically as the lower end of 18 moves downward upon the descending incline of the cam. The plunger itself is a distinct part of the defendants' machine, just as it is in the Jensen machine, and the bracket which supports it is a different thing, and has a distinct movement. It is true that the plungers are carried around and around by the rotation of the brackets, but the can-heading mechanism above, which acts in combination with them, is affected by the same rotary movement. The Jensen machine would not be changed if it were placed intact upon a car, and made to operate as the car travels upon a horizontal plane as a railway track, and yet, by being carried along horizontally, the plunger would have a horizontal movement,—that is to say, it would be moving horizontally as the car traveled,—and that horizontal movement would be quite similar to the movement which affects the plungers in the defendants' machine by the rotary action of their supporting brackets or radial arms.

The tenth claim comprises the plunger, S, the conical guide or bev-

eled hole in combination with an upper plunger, which presses upon the can head, and follows it down by gravitation or other force so as to steady the can in its descent. There are similar upper plungers working in combination with the plungers, which push the cans upward into the can heads, in the defendants' machine, but it is contended that infringement of this claim has been avoided because the defendants' upper plungers are not required to steady the can, other means being provided to that end. It is not denied that the upper plunger may to some extent steady the cans in their downward movement, and the testimony shows that if a can for any reason sticks in the hole, so that it does not descend by gravity, the upper plunger acts as a positive force to push it down. It is my opinion, however, that the intention of the builder of an infringing machine has nothing to do with the question of infringement, because a device which is in fact the equivalent of another in force, and which produces the same effects by the same means, is an equivalent, notwithstanding any failure of its maker to comprehend in his design all the effects which it is capable of producing. I can find no substantial difference between the upper plungers in the two machines, either in form, effect produced, or the means by which the effect is produced.

It is unnecessary to discuss the eleventh claim any further than to say that among the devices making the combination of that claim there is included a part which I have heretofore referred to as the second feeder, F, which is not reproduced in the defendants' machine, as I have heretofore explained, and therefore the eleventh claim is not infringed by the defendants' machine.

By the final decree the court will award a perpetual injunction against the manufacture, sale, and use of machines embodying the combinations specified in claims 5, 9, and 10 of the Jensen patent, and will deny relief as to claims 1, 3, and 11. The case will also be referred to a master, if necessary, to state an account, or ascertain the amount of damages which the complainant is entitled to recover.